Good morning. May it please the Court, my name is Ellen McDowell and I represent the appellant, Roy Denby-Peterson. With the Court's permission, I'd like to reserve three minutes for rebuttal. Okay. Thank you, Judge. The question before the Court is whether a creditor that repossesses property of a debtor's estate before the bankruptcy filing and refuses to turn it over upon the bankruptcy filing violates the automatic stay. And the clear answer to that question is yes. Is it upon leasing the automatic stay whether or not sanctions should be imposed for it? That is true, Judge. Okay. Before you answer the get to your bane argument, focus on standard order of view for just a second. I know you may feel like this is a law school question, but what is the standard order of view for a finding there's a violation or no violation of the stay? And what's the standard order of view for granting or denying sanctions for the violation of the automatic stay? We believe it's de novo because these are questions of law, Judge. Sanctions? Is that with the discretion? Not abuse of discretion? Yes. So you think both are de novo and the sanctioned one is not abuse of discretion? Correct, because we believe that the bankruptcy court held that there was no violation of the stay and therefore didn't reach the sanctions question. So we have nothing to review on the dial of sanctions? Correct. Okay, go ahead. No problem. I'm just saying it's not sanctions automatically follow if there's a violation of the stay that sanctions automatically follow? Yes. 362K states that the court shall award damages if there's a willful violation of the stay. Okay. So the plain language of the bankruptcy code compels a finding that the creditor here violated the stay. And we start with section 542A, which states that any entity in possession of property of the estate shall turn over that property, shall deliver that property to the trustee, which in a Chapter 13 case is the Chapter 13 debtor. How can you say, though, that that's self-executing or automatic? It's got a defense in it. The property is not going to be inconsequential value. It could be latches or other defenses. And the bankruptcy rule 7001 says this has to start by way of an adversary proceeding. So how can you say that there's an automatic obligation to turn over? The language of the statute is clear. It says the entity in possession of property of the estate shall deliver it to the trustee. Well, if we look at 542B, which talks about shall pay a debt, same structure, just one has to do with items that can be used to sell or lease, and the other deals with the obligation to pay a debt. The Supreme Court has said that that's not a self-executing requirement because it's subject to offset. So how do you reconcile the similar language in 542 to say that 542A is automatic and 542B is not? 542B deals with money, money that can be offset. 542A deals with other types of property of the estate. There is no requirement for a court order in Section 542A. How do you get around Rule 7001, which says it's got to happen by way of an adversary proceeding? Well, the court below found that it was not required to be commenced by way of an adversary proceeding. We were allowed to do it by way of motion. And there's also a case that says that it has to happen if a party chooses to proceed by motion and there's discovery of other things, one may waive their right to an adversary proceeding. But my point is that a procedural event has to happen under court supervision before the possessor of the object is required to do anything. And you're suggesting the statutes is automatic. That's exactly what it says, Judge. It says shall deliver. Without any kind of court process. That's the way that... Then what about all the defense, the defense of unless the party is of inconsequential value? Who's making that judgment? I think that the way that that can be determined is simply by inquiring of the debtor. Is this property of inconsequential value to you? Because if it is, then I don't need to turn it over to you. I see. And what about latches and other defenses that arise in the turnover context? I don't understand your question. Latches... Latches is a defense that's been used to defend against a turnover, a request for turnover. Someone says latches, you waited too long. Well, we believe that this is self-executing. So that... Then what about the defenses? The defenses just get brushed aside because it is self-executing? Correct. So the defenses can be raised after the fact by the creditor. If the creditor wants to argue that there is some reason why the property should not have been turned over. But it's automatic. The property needs to be turned over. Then any issues that arose in that context can be decided by the court if the creditor chooses to do that. But your submission is that the creditor has to turn the property over. And to the extent that there's some defense there, the only way to assert that is for the creditor to go in, I guess petition for relief from the automatic say, and raise the issue that way. That is correct. And that's what Whiting Pools says, specifically. That's what what says? Whiting Pools. Oh, Whiting Pools. Whiting Pools doesn't say it's automatic. Whiting Pools required adequate protection before that, before any turnover. They had to put up $20,000 before they turn over the equipment. So that Whiting Pools doesn't say it's automatic. Whiting Pools, the way I read Whiting Pools is that the property must be turned over, and then the creditor can apply for the protections provided for it in the bankruptcy code, which is 362E and 362F, if appropriate. And, of course, relief from the stay under 362B. How do you reconcile your position with the avoidance provisions in Section 547B? Are they automatic too?  It's the same kind of scenario. One is when you turned it over, and the preference avoidance proceedings happens to take back things that were dispensed within whatever the period, 90 days, whatever the period is. Are you suggesting those are automatic too, that as soon as someone speaks up, you can reach back on the things that were given up within the 90 days? I don't think that that's ever been judicially determined in that fashion. I think that Section 542 clearly states that anyone in possession of property of the estate shall deliver it to the trustee. And Congress set this up this way intentionally, and I can walk you through that if you'll allow me to. Both Section 542 and 362A3 are automatic and self-executing. They do not require an order of the court. Nowhere in those provisions does it say that a court's intervention is required for the relief and the protection granted to the debtor by these statutes to be invoked. I don't think that the creditor should be able to secure some adequate protection of the property involved, especially in this case, which is a very expensive automobile which had no insurance. Shouldn't there be some security for that type of property? Absolutely, and the Bankruptcy Code provides for that. I mean, before turnover. No, I think the clear language of the statute says... ...to the creditor, and she, without insurance, runs into a tree. There goes my car. Yeah, but 362F of the Bankruptcy Code says that if there's irreparable damage, the creditor can go to the court and without even notice or a hearing, on an ex parte basis, can ask the court to prohibit or condition the use of the property. All right, so I have to surrender the car and say, here it is, but you can't use it. Yes. That didn't happen in this case. That makes no sense, especially in this case, because you have... Why don't you just keep the car in the dealership? What's the difference? Well, in this case, the debtor did have insurance, and there was evidence of that in the record, although the Bankruptcy Court found that there was no proof. There was testamentary proof that she had insurance. But wait a minute, aren't we sort of bound by the Bankruptcy Court's finding? You are, Judge. But the insurance was a red herring in this case, for many reasons. That's a really important issue, as far as I'm concerned. This is an automobile, and she's driving it, and she has no... The record says no insurance. The record says no proof of insurance, Judge. There's no... There's a fine named no insurance, though, isn't there? The Bankruptcy Court found there was no proof of insurance provided at the hearing. That means no insurance to me. I mean, you got an insurance card. You just show your insurance card. What was asked of the debtor at the hearing was to provide proof of current insurance as of the date of the hearing, which was in August, when the car was repossessed five months earlier. She did not have proof of current insurance because the insurance had lapsed because she didn't have any income to maintain the insurance. I didn't want to stay on that point, but I was just concerned about your comment. Automatically, you have to turn over the car, and I'm just not convinced yet that that's... The writing states exactly that, that the property must be turned over, and then the creditor has the protections and has to avail itself of the protections provided in the Bankruptcy Code, including going into court and asking for an ex parte order. But your predicate for the 542 is that there's been a violation of the stay, correct? Yes. We contend that the property needed to be turned over under Section 542A and that the stay was violated when the creditor failed to turn the property over. But the plain language of 542, I'm sorry, 362, the stay provision, stays any action to obtain, that didn't happen here, the creditor already had it, or to exercise, it already had control, so it wasn't engaging in some future act. So it didn't do anything to violate the stay under the plain language of the statute. It didn't engage in acts to exercise control. It already controlled. So how is there a violation of the stay? Because if there's no violation of the stay, there's no obligation to turn it over. We contend that they did violate the stay because they did act to control, to exercise control. We're saying it's a passive violation because they had an affirmative obligation that they ignored. And they outright refused to turn it over when we requested it. Passive retention of property when there's no demand for turnover, we contend, is not a violation of the stay. But once there's a demand. Under the statute, there's a very similar wording to the statute you're relying upon. Why wouldn't it be? Because if no one asks the creditor to return the collateral and there's no act in that case, the creditor isn't acting, it's simply maintaining passive retention, there's no act because there's no refusal, then it's not a violation of the stay. Could there be a violation of the stay by refusing to change the status quo? Because the status quo at the time of the filing was possession of the vehicle by the creditor. You're saying a refusal to return is a change of the status quo. Otherwise, there'd be no violation of the stay. Right. Because, again, under whiting pools, the court says that even though the debtor does not have a possessory interest on the date of the bankruptcy filing, Section 542 provides that it needs to have a possessory interest. That's a turnover case. I'm in stay land. Right, I understand. But the bankruptcy code changes the status quo. As soon as the petition is filed, the debtor now has a possessory interest in that vehicle because of Section 542. And what does the creditor then have to do as soon as it is filed? As soon as the case is filed under 542, they must deliver the vehicle to the debtor. But that's different from what you said a few minutes ago. Because you said they don't have to turn it over until there is a request. No, I said they didn't violate the stay until they refused the request. But the language is the same. It's mandatory language. Correct. They must turn it over, but if there's no demand for turnover, there's no violation of the stay. So they must turn it over, except they don't have to turn it over unless it's demanded. Correct. No, I'm sorry. I didn't mean to say correct to that. It is a mandatory obligation to turn over property of the estate under Section 542A. Okay. With or without a demand? Yes. That's the clear language of the statute. Okay. Go ahead. But if there is no demand and there's no refusal, then there's no violation of the automatic stay. But if someone is required to – someone who refuses to change the status quo, you're saying violates the stay? Absolutely. They're exercising control over property of the estate, and the act to exercise that control is their refusal. But they had control even before there was a request for return. The control status of the circumstance of control over the car remained unchanged. Pre-petition, post-petition is exactly the same. Right. But the filing of the bankruptcy petition changes that, and that's the preamble to Section 362A. It doesn't change. It tells them, don't do anything. Don't change the status quo. After the petition is filed, don't change the status quo. They didn't. They kept retaining the car. And don't take any act to exercise control over the estate, which is, in our reading of the statute, do not refuse when the debtor says, give me my property back. But you can require adequate protection for the property. You can by asking the court to do that. And, again, I'd like to draw your attention, if I may. I'm stuck on the insurance thing. Adequate protection. They show me insurance. If something happens to my property or the property of the estate, however you want to refer to it, it will be covered. Right. So Congress was very careful in the way that it drafted the bankruptcy code because Section 542 and Section 362A.3 do not mention anything about court approval or action being required before those statutes are effective. In contrast, Section 362D and F and Section 363E all say that upon request of a party in interest or upon a motion, a notice of hearing, the court can report. And that was done. That was done. I thought the creditor did ask for insurance. The creditor mentioned as an afterthought in its opening papers with the bankruptcy court that it had not been provided with proof of insurance. It didn't say this vehicle shouldn't be returned because we haven't seen proof of insurance. It said this vehicle shouldn't be returned because it's not property of the estate. You don't think the lack of insurance would be a justification for not surrendering a vehicle like the one involved in this case? Absolutely not. Not under the plain language of Section 542 and 362A3. And I can tell you why insurance was not an issue in this case. Because ultimately, the bankruptcy court did order that the vehicle be turned over, but did not condition that turnover on the provision of insurance. It wasn't an issue in this case. The bankruptcy court just said, you're right, Ms. Denby-Peterson, this vehicle is property of the estate. Creditors, you must turn this over to Ms. Denby-Peterson within 10 days. And that was done immediately? It was done within the 10 days, yes. Is that the right process, though, to have the court make that decision on the basis of the information available? Not under the way that Congress has set up the framework of the bankruptcy code. And the reason is because it's so important for the debtor to have possession of her assets in order to obtain the goal of the bankruptcy procedure, which is to get a fresh start and to reorganize her debts. She can't do that without possession of that vehicle. And in this case, it's in a car. It seems to me your argument makes some sense because it is sort of livelihood. Let's assume, using this example from the other day, let's assume it's a large screen color television the week before the beginning of football season. And the person is defaulted on the debt, has no real obligation to pay the debt, but does not want to miss the kickoff of the first game. So it goes to the debtor and says, you know, by the way, you got six days to get me that TV set. And then you're saying the debtor has to return the TV set that is currently in default. And that is somehow consistent with the interests of all the parties to the secured creditor, as well as the debtor. Because with the car, it seems to me your argument becomes very tangible and has some sense. And it's easy to put it in conjunction with the purpose of bankruptcy for getting a fresh start. She, I think, lost her position as a nurse, lost several customers or clients. But this statute is not worded to only apply to means of livelihood properties. It's all kinds of property, leisurely goods, all kinds of property. And in that, in the leisurely good property context, your argument seems more troubling than it does in this context. I would agree with that. Certainly. May I answer because I'm out of time? Certainly, the bankruptcy code is designed to protect debtors and their their assets that can help them rehabilitate. But it doesn't limit the applicability of the statute to property of the estate that's needed for those rehabilitation purposes. So you're absolutely right. It doesn't make a lot of sense in the context of a big screen TV, but it does equally apply. I mean, we don't know if the television is needed for the children's home or something. I mean, there's not going to be a decision made before that. These statutes are implicated as to the necessity of the property of the estate to the debtors. Reorganization efforts. Does it matter? The state law requires insurance beyond a vehicle before it is driven. You are the pleasure. I can't. I can't disagree that insurance is critical to a creditor's interests, but there are protections for the creditors in the bankruptcy code for those for obtaining those protections. The statute is clear that all they have to do is ask the court and the court will absolutely condition the use of the state on the provision of that insurance. Thank you. May it please the court. Craig Goldblatt as amicus in support of the district court's judgment. The car dealership in this case repossessed the debtors car before she filed for bankruptcy after the bankruptcy was filed. There were no we haven't. But hope has struggled with. Well, you get a sense of what we're struggling with. The application of the statute to this petition. Sure. So your honor, where I was going is that after the case was filed, there were bona fide disputes about the ownership of the vehicle and our basic submission because the defaults on the payment for the title and tags. Yes. And there's a question in this case about the enforceability of the waiver of redemption, essentially, and whether that was enforced on New Jersey. Well, that was a bona fide dispute. It was resolved after a two day trial. And our basic disputes like that, like the availability of insurance, like the application of one of the defenses to turnover arise in real bankruptcy cases all the time. And our basic submission in this case is that while disputes like that are being sorted out by the bankruptcy court, the automatic stay does not prohibit a creditor from simply preserving the status quo. In the meantime, while this is it, you're saying it doesn't have it. But looking at the length of the statute, your opponent's position, I'm assuming, would be if that's your concern, you petition for a leave from the automatic stay. So. So, your honor, answer that in a few different ways. So there are responses to that that come from the text of the statute, from the legislative history and from its purpose. Textually, as Judge Schwartz said, there's a statutory requirement in the automatic stay that there be an act. So what the stay prohibits is not simply the exercise of control, but an act to exercise control. And what about whiting pools? So whiting pools doesn't help the appellant at all. And whiting pools was a case in which the debtor, in fact, filed a motion seeking turnover. The IRS responded by saying we shouldn't be required to turn over. We repossess this car before the bankruptcy and we should be permitted to go ahead and sell it. What the Supreme Court said sort of following Judge Friendly's very thoughtful opinion from the Second Circuit that walked through the whole history of this was no. Upon the filing of a motion and the order of a court, you are required to turn it over. We agree with that. There is no argument here. And indeed, in this very case, that's exactly what happened. There was a hearing. The court ordered turnover, just like in whiting pools. That's correct. Our only submission is that in the meantime, while disputes over where it goes are resolved by the bankruptcy court, the automatic stay, which is a status quo preserving provision, doesn't require anything else. And the history of all of this is, I think, important and clear. It is true that Section 542 says shall. Are you suggesting there's no automatic turnover that all all property of the estate has to be has to go through a court process? So I'm saying that there is not a judicially enforceable requirement to turn it over until there's an order of the court. What happens in the real world all the time is someone will call someone up. And if you don't have a defense, it's not uncommon to turn it over. But where there is a dispute, you're allowed to passively retain the collateral without violating the automatic stay. And, you know, so the provision of the automatic stay that provides that the exercise of an act to exercise control of a property of the estate was added in a 1984 amendment to the code. No one disputes. The 84 amendment did not really clarify very much. Well, that's sort of our point, which is before 1984. No, no one contends. There's no suggestion in any of the cases or the scholarship or the literature on this topic that before 1984, there was an affirmative duty to turn something over upon the filing. So in the years between the adoption of the bankruptcy code in 1978 until 1984 and under pre-code practice before 1984, which is discussed at length in Judge Friendly's opinion in Whiting Pools, you know, at least beginning in 1978, the language in 542 that says you shall turn over, that came into effect in 1978. Prior to 1984, no one thought that the turnover provision was self-perfectuating. So the issue arises only by virtue as a statutory matter from the addition in 1984 of the language to the automatic stay that says an act to exercise control is subject to the state. But there's no textual link between 362 and 542. Correct. I think that's exactly right, Judge Schwartz. And so the point is these 1984 amendments, the legislative history and the text around these 1984 amendments, is clear that they were intended simply to be clarifying, not to affect an important change in law. And the Supreme Court has said over and again that in the bankruptcy context in particular, where you have a long pre-code practice that then gets codified in the code, that when Congress, unless Congress is clear, you shouldn't read a legislative enactment to abrogate pre-code practice. So let's focus on 542 if we could. And your adversary draws our attention to the shall deliver to the trustee, a mandate, a requirement that your adversary reads as self-executing. Right. It's your position, though, pre-code practice was it wasn't self-executing. Some judicial event happened. That's exactly right, Judge Schwartz. And that's what happened in Whiting Pools. That was what happened between the enactment of the code and Whiting Pools. And nothing in the 1984 amendment reflects any intention by Congress to alter that practice. It was never self-effectuating. And there's no basis in what happened in 1984 to signal an intent by Congress to change that practice. You heard me ask your adversary about Federal Bankruptcy Procedure 7001. Yep. That seems to convey a judicial proceeding must take place as a means to effectuate turnover. Am I mistaken about what that rule says? No, you're exactly right, Your Honor. Rule 7001 contemplates routine injunctive relief when adversary proceeding is required. That's what, as a matter of process. So if we pull together that rule and subsection 542A, the shall deliver by operation of this procedural rule. You can get it. It will be delivered to you so long as you fulfill the requirements of 7001? That's exactly right. No one's contending that a secured creditor can hold on to the debtor's property throughout the bankruptcy case with impunity. What's in dispute here is really only what happens in the period of time between the filing of the case and the time that rule 7001 proceeding is resolved. And, again, the proposition is that the automatic stay in so many contexts, this court and other courts have explained, is a status quo preserving statute. So it seems particularly anomalous to read that statute, which has always been understood about preserving the status quo, making sure that the debtor's estate isn't picked apart in the meantime, to be status quo altering simply in the narrow period of time between the onset of the filing of the case and a ruling by the court. The majority of the circuit courts who have addressed this seem to side with your adversary. That is correct. That is correct. So, you know. So why are they mistaken? We respectfully disagree with their reasoning. We think that if you look at the Tenth Circuit decision in Cowen, the D.C. Circuit's decision, Judge Williams' decision in the Inslaw case, explained very clearly the history and the purpose. I think Inslaw explains that the automatic stay is intended to be a status quo preserving rather than altering. The Cowen case explains the statutory language and the role of act, as Your Honor was explaining before. The Williams case from the Seventh Circuit, for example, that comes out against us, never addresses the statutory language of the requirement of an act. What do we do with words like shall turn over and shall deliver? They seem very obligatory. And they have the same meaning that they had. Those words were in effect from 1978 until 1984. And in that period of time, no one suggested that the filing of a bankruptcy case itself made that provision self-effectuating. It's true. You shall. The question is when. And the answer to that question, as Judge Schwartz was suggesting, is upon a ruling after the resolution of an adversary proceeding brought pursuant to the bankruptcy rule. The Sixth Circuit say upon the filing of a complaint. If no motion is brought, if there's no adversary proceeding, it doesn't get turned over. I'm sorry, Judge McKay. You're saying shall means you shall upon X occurring. Correct. But what if X doesn't happen? So that's within the control of the debtor. So the party who wants to enforce their rights is entitled to bring a proceeding to enforce their rights. But then it would say shall upon motion or shall upon the debtor. So moving is something like that. So, Your Honor, let me put it this way. If you look at Section 362 of the Bankruptcy Code. Look at it right now. Section 362 A makes clear that that read the statute itself is an injunction. So Congress knows how to use injunctive language. It says a petition filed under this section operates as a stay applicable to all entities. So when Congress wants to write a statutory provision that operates as an injunction, it certainly knows how to do that. And then it did that in Section 362 where it says this statute operates itself as if there were a court order. There's nothing in Section 542 that contains that type of injunctive language. And so simply as a statutory matter, it makes sense to give effect to Congress's judgment to include injunctive language in Section 362, but not in Section 542. As Judge Schwartz noted during my opponent's argument, the Supreme Court's decision in Strumpf is very strongly in accord with our view of this statute. So Strumpf involves Section 542 B. It had a provision in it just like 542 A that said shall. It said that someone who owes a debt to the debtor shall pay that debt. In Strumpf, there was a bank that was holding the money in a debtor's account. That was a debt owed to the debtor. It claimed it was entitled to set off. And the Supreme Court there says you are allowed to preserve the status quo to hold that money to protect your right of set off so long as you begin a proceeding promptly to adjudicate your right of set off. So there, too, the notion that notwithstanding the shall language, it is appropriate under the automatic state to preserve the status quo while the bankruptcy court sorts out the respective rights of the various parties. This text, Collier on Bankruptcy? I'm sorry? Collier on Bankruptcy. Yes. It's a text I try to avoid. It describes the turnover provision as self-executing and it does not condition turnover on adequate protection. Can you comment on that? Your Honor is correct about avoiding the use of Collier. Look, as the Court has noted, this is the majority view of the Courts of Appeals. We respectfully suggest that the text of the statute, the language of act, the history of the way the statute developed and the fact that the Supreme Court has said over and over again, you don't read the bankruptcy code to override pre-code practice in the absence of clarity from Congress. But didn't exist, just on the Collier point, just for the purpose of the record, there's a 16th edition that says generally an adversary proceeding, not a motion, is required for Section 542 turnover actions. Right. By virtue of that language, it's conveying it's not automatic, there's got to be a proceeding. So should we stay away from Collier's? Well, look, Collier's is conflicting. Okay with me then. I mean, you know, I have views about the quality of the analysis in Collier's generally. And I start where Judge Fuentes did, which is, you know, at the end of the day it's a compilation of the authorities of bankruptcy law. And when the authorities on bankruptcy law are conflicting, Collier's doesn't advance the ball about how to understand. You know, I do see this in some contexts as due process. I would like some fairness in this. I've got this car. Let me at least go to court and see if I can present my case and either keep the property or turn it over. So I don't know if there's that sort of sentiment in bankruptcy law. But I suppose that's what the dealer was seeking. That's exactly right, Your Honor. This is a common sense. That's like my core submission. This is a common sense proposition. So in squaring to this other provision that says you've got to turn it over. And you do if a court determines that in fact it's not subject, as Judge Schwartz said, the statute has exceptions. Your Honor's point about insurance. So it says on the one hand you need to turn it over. But on the subject of shall, if you look at the exceptions to the automatic stay, section 362 D1, what it says is that, just to get the language precise, that where someone moves for relief from the stay, the court shall grant relief for cause, which includes the absence of adequate protection. So if you don't have insurance, the dealership is entitled to get it right back. So we're left with a common sense proposition. You could argue that there are exceptions to the turnover power. You could argue that the stay should be lifted to get it back. Both sides may have arguments. The question before this court is, what should happen while those questions are being resolved? And, again, our basic submission is that the automatic stay, which is by its nature status quo preserving, shouldn't be construed to require you to alter the status quo while the parties' various rights are being sorted out. That's the analysis that I think Professor Brubaker sets out quite forcefully in his article. Judge Keel's decision from the bankruptcy court in D.C. in the Hall case, I think, sets out that analysis quite clearly. It is true that there are divisions of authority on this question. I just think those authorities are far more persuasive than the ones of the other side. The problem is the creditor in this case just really didn't do anything at the start. Would the appropriate thing be to file a motion to stay the turnover and then present your concerns? We think the appropriate procedure is for the – and the one that makes the most sense in light of the structure of the code – is debtor files a case. If they call them up and there's a dispute, if you call them up and say, can I have my car back, and you look at it and you have no good faith basis to not give them the car, the right thing to do is to return the car. If you have a dispute, either, as in this case, you dispute who owned it, or if you dispute whether there's adequate protection, the debtor should bring the adversary proceeding under Rule 7001, as Judge Schwartz explained. The creditor can respond to that and say, look, I'm happy to give you your car back. Just give me adequate protection, just post insurance, and then you can have it. The court can – this can be resolved by stipulation if the parties agree. If they can't be resolved, the court should do it. Bankruptcy courts are terrifically hardworking, fine judges who will do this quickly. And as soon as it's resolved, the court's order should be obeyed and is sanctionable by contempt if it's not. But that's the appropriate procedure. The party should tee up the question for the court, the court should resolve it properly, the court's order should be respected. I asked your adversary about preference avoidance, Section 547. Is that self-executing? I don't believe so. No more so – it certainly isn't in the real world, and no one ever suggests it is. And it's an analog to turnover, right? It's just at a different – it reaches back farther in time, am I correct? It's backwards looking rather than forwards looking because it's a money damages remedy rather than give me the thing, typically. But at the end of the day, I think that that's right. The Bankruptcy Code does lots of things that create rights and remedies in various parties. And the Bankruptcy Code, like other federal statutes, typically contemplate parties going to court and enforcing their rights, and no one thinks that until those rights are adjudicated, the fact that there's a statute means that – and that prior to a court order, you've got to – So is it your position the only thing that's self-executing in the Bankruptcy Code is the automatic stay provision upon the filing of the petition? Yes, and the reason you know that is the automatic stay, unlike any of the other provisions, actually uses injunctive language. It says automatic. And it says operates as a stay. So Congress knows how to do that. It did that in the automatic stay. It didn't do it in Section 542. And therefore, the obligation to turn over is not enforceable prior to a court order that orders turnover pursuant to Section 542. Unless there are further questions. Thank you. If I could address the Rule 7001. Before you do that, respond to Mr. Goldblatt's representation about the pre-'84 practice, the standard practice in bankruptcy and how this would have proceeded before the 84 amendments. I don't disagree with my adversary about the way that was approached before the 84 amendments, but I think that the clear language of the Bankruptcy Code and the tightening of Section 362A that the Congress did in 1984 makes it unnecessary to go beyond that. The clear language of 542 says shall turn over the property and a creditor may not act to exercise control over a property of the estate. It's simply clear. Why do you need any shall not act to obtain possession? Why is that language in there? Why not just say it acts as an automatic stay and the creditor shall turn over the property? When you put the word act in there, doesn't that require something other than a passive retention of property that was already in your possession before the petition was filed? Yes, and I think that an act of refusal to turn over property that should have been turned over under Section 542A is an act. Okay, so if I get a phone call from the debtor saying, give me my TV back, football season is going to start in three days, and I hang up the phone, that's an act? Yes, you violated the stay. Sorry, you're going to be subject to sanctions. Not doing something, just ignoring it itself is an affirmative act, it is action? When there's a request, a demand for turnover, yes. It doesn't sound like that. You're saying there has to be a demand in order to give meaning to the word act. To invoke damages under the automatic stay provisions, we contend. Right, but where does the affirmative requirement come from? Is it in the word act? It sounds like doing nothing is doing something. Doing nothing is doing something if there's a requirement to turn over property of the estate. At first, that doesn't sound right. Tell me about 7001. Yeah, and you kind of caught me off guard with that one, so I didn't have a ready answer, but I think that when 7001 is invoked is when there is an action that's required, when there's a refusal to turn over property of the estate, and the debtor has to seek the help of the court to obtain that property, that's when 7001 comes into play. I don't think you can read that in conjunction with 542A and say because there's a rule that says that an action to enforce the code is done in this fashion, that that means that it must be done. But outside the bankruptcy context, there are lots of statutes and laws that require people to do things, and in order for them to make it happen, they have to go to the Federal Rules of Civil Procedure and file a complaint. It's an analog, isn't it? It is, but the bankruptcy code was set up by Congress to make it automatic and self-executing that the debtor has possession of its property so that it can reorganize. It's so important in the bankruptcy framework that there is no court action required, Section 542. How often, how many times can you tell me that as a trustee, the trustee in this case was able to seek sanction for somebody who refused to return something, i.e. without bringing any action, without initiating a motion or an adversary proceeding? Because it sounds like, in reality, the way that 542 is effectuated is by virtue of some judicial action. A court process is initiated by the trustee, and then the court takes action. If the creditor or entity in possession of property of the estate fails to act in accordance with the dictates of 542A, of course there's an action required, a motion or an adversary proceeding. There's no doubt about that. But that doesn't change the fact that it's a self-executing, in the sense that it's an affirmative duty. Can't dispute that. There's an affirmative duty under 542A set forth clearly in the code for the creditor to do this. And that's why section 362A.3 is important, because that's the way to remedy. 542A is a possessory statute. 362A.3 is the protection statute for the debtor. Has to be protection. Congress thought it so important that it said, it wrote in the bankruptcy code, there is no action by the court necessary to invoke these protections. Which ones are you talking about now? 542A and 362A.3. But in every instance where a creditor's protection is invoked, there is court action required. I would just like to... I'm sorry, could you say that again? In every instance where a creditor goes to the court, it needs to be protected. A creditor goes to the court. I'm sorry, let me start again. In every instance where a creditor is to receive protection under the bankruptcy code, court action is required. If you look to 362D and F and 363E, they all require the creditor to go to the court and seek protection. And Whiting-Pools is specific on this point. The last sentence of the opinion says, section 542A simply requires the service to seek protection of its interests according to the congressionally established bankruptcy procedures, rather than by withholding the seized property from the debtor's efforts to reorganize. You have to give the debtor its property to reorganize, and then the creditor goes and seeks protection under the bankruptcy code. And that's before the 84 amendments? That's before the 84 amendments. Something about that sounds backwards. I mean, shouldn't you seek protection of the court and then turn over the property? You're saying turn over the property and then seek protection of the court. That's what the Supreme Court said. That's how they interpret the bankruptcy code because it's just so critical for a debtor. Essentially, when my adversary was arguing, it came to me, and this is really kind of obvious, the issue is who bears the burden of the advancement of the notion that there's a bona fide dispute. The creditor turned out to be wrong in this case. The vehicle was property of the debtor's estate, and seven months later, the court ordered it to be returned to her. Was that because of the waiver issue under the state law? Yes. They improperly or turned out to be wrong, wrongly argued that the waiver effectively was a surrender of her state court rights. Not true. It didn't turn out to be true. But they had a legal position, so why is it willful? Because you want sanctions, right? You think the district court erred in two regards. One, by violation finding and then not imposing sanctions, obviously, because it didn't have the wrongdoing. How could it be willful then? They had a legal position that was hotly contested. How was that willful? Under the Third Circuit's decision in, hold on. Well, I'm talking about willful conduct. I'm not talking about willful violation of the stay. I understand. It's Lansau v. O'Cady's, 853 F3657. Good faith is not determinative of willfulness. The automatic stay is. For purposes of sanctions. Well, you only get sanctions under 362K if the violation of the automatic stay is willful. And willfulness only requires that the creditor know that it's taking this act, not in violation of the stay. You said a bunch of words. You just said a bunch of words. Yeah, but I misspoke. Know that they're taking an act. Not that they're violating the stay, but know that they're affirmatively taking the act, which is the refusal. Could they not know that they're taking an act? Performing an affirmative act. They have to know that they're performing an affirmative act. They're not sleepwalking. All that is required is that the acts which violate the stay be intentional. That's the language of the case. They're intentional acts. This intentional act was we're not giving you your car back until there's a judicial determination that the vehicle is property of the estate. So anyone who wants to stand on their so-called rights is going to be in violation of the stay if they lose before the court? Because all they had to do was turn over the property while the issue was being duty treated. There would have been no harm. Not any protection, though, without adequate protection. They could immediately apply to the court and get adequate protection within a day if there's irreparable damage that they can do. Under the emergency stay. Yes. What if the court has upon motion by the debtor, not the creditor, comes up with a novel interpretation of the law? And I'm not saying this is the case, but let's assume insofar as the New Jersey waiver provision in this contract, let's assume that all of the intermediate appellate courts in New Jersey had gone the other way and said that waiver under the New Jersey law is perfectly valid, not a contract of adhesion, and that we're going to enforce that. All of a sudden the New Jersey Supreme Court comes along and says we disagree, the waiver provision under the New Jersey law is totally invalid. So at the time the creditor refused to turn over the car, it was relying upon what it thought was its valid uncompromised property interest in that car. No ill intent whatsoever other than to validate its rights. Supreme Court of New Jersey comes along and says you're wrong, it's a matter of very technical contract law. You're saying that's willful conduct that triggers sanctions against the creditor. The risk of taking the legal position. That's a yes. Yes, is on the creditor. Has to be. Because the debtor is the only one who suffered harm here. And the debtor is the only one that could suffer harm here. Because of the interpretation of the New Jersey waiver law. Correct. Had it gone the other way, the creditor would have suffered harm. If the creditor's position had turned out to be correct, then there would be no violation of the state, of course, because the vehicle would not be property of the estate. There would be no sanctions. But it turns out that they were incorrect. And the risk of harm weighs so heavily on the debtor that we can't countenance that. That's not what Congress intended. Congress clearly set forth in Section 542A that the property must be turned over. We can adjudicate that for a year or two years if we need to. But while we're adjudicating that, the property must be in the hands of the debtor. And the creditor is entitled to adequate protection. So there's no harm if it were to return that way. What happened in this case is the debtor was very, very badly harmed. And that's not what the bankruptcy code intended. And we believe that the matter should be reversed.